Good morning, Your Honors. Doug Godron. I'm here on behalf of the appellants, Mr. and Mrs. Anand. May it please the Court, I've thought considerably on how to try and question relative to the defense, the lender handling and processing of their loan portfolios in what's otherwise referred to as a securitization trust and particularly loans in default. And in that regard, I mean, Foreclosure Defense Counsel, particularly in Maryland, have had considerable difficulties as the cases have gone on before. And one of the, it was just yesterday that my out of the Arizona Court of Appeals that I thought fairly illustrative, particularly in this case. I don't have a citation, but it's a case that goes by the name of Steinberger v. Indymac, which was issued on January 30 of 2014. And in a 33-page opinion, the Court, in this synopsis that I have, it says the most the claim for payment slash discharge of a debt on the homeowner's allegation that OneWest had been paid all or at least 80% of the amounts claimed due under the loan due to an FDIC shared loss agreement, which was attached to the complaint. The Court permitted the claim even though at the pleading stage it was not clear whether the agreement applied to that particular loan. The Court found that the agreement does appear to provide that in exchange for OneWest's consumption of Indymac Federal's loans, the FDIC would reimburse OneWest at 80% for any default in payments on these loans. The homeowner alleged that this agreement combined with insurance coverage and where other sources of reimbursement has resulted in OneWest either being paid in full on the note or having received 80% of the payments due on the note. It goes on to indicate that the set-off against the amounts claimed due on the loan in securitization cases due to insurance and other sources is a matter we have been advancing since 2008. We have had discovery on these issues repeatedly compelled, though never produced. The banks will take a dismissal or attorney's fees against them rather than produce this information. This case is the first that we know of which now permits an affirmative claim to be made against the foreclosing bank that it has been paid in full from third-party sources. This is very similar to the case that we're dealing with. Who was the plaintiff in that case? I'm sorry? Who was the plaintiff in that case? The plaintiff in that case was Steinberger, was a borrower. You've given your opposing counsel a copy of the case, I take it? I don't have a copy of the decision, I'll be happy to give him a copy of mine. Generally we just go with actual... You don't have the decision or the copy? This is what I was handed. I apologize, I didn't have a chance to It's hearsay from your paralegal, right? Exactly. That's what it is. But your client is the borrower too, that's your point, right? Well, that's true. And you're saying that the load's been discharged? You know what the... Because the bank had an insurer? I want to say to this court at the very outset, because I know that there have been four cases that have come up to this court on appeal coming out of Virginia. One case out of Maryland where it has been raised, similar type allegations, where parties advance a theory that based upon various insurances, monoline insurances, credit default swaps, things of this sort, that loans sitting within a credit or in a securitization trust have been paid in full. But the arguments have always been that the loan is discharged and the borrower is wanting a release of the lien based upon the payoff of the loan. And the one thing that I am not saying to you, and this is the distinction in this case, is that I am not here and will readily admit to you that my borrower still owes money on the loan. We can get into some questions on who the borrower owes monies to. We've had this case too. From South Carolina, we had a borrower who admitted he owed money to somebody, but just wasn't the person. Well, the one thing that we do know, and this was submitted by way of affidavit to the court below in the 12B6 motion to dismiss, was an affidavit that was fairly lengthy, and it concluded... Did the court consider the affidavits in the 12B6 proceeding? I'm sorry, Your Honor? Did the court consider the affidavits in connection with the 12B6 proceeding? It absolutely did, particularly... Did that change them to Rules 56 or something? Well, that was one of the arguments that I raised in my brief. Did he consider them in connection with the... You're not answering my question. Were the affidavits considered? The judge, specifically what he stated in his decision, and his decision was made on the record. You can't answer that yes or no. Well, I'll tell you what the judge... Well, you can't answer yes or no. I think he did take into consideration the affidavit. All right, that's all I'm asking. Did he consider your affidavits? So it's something... Is it still a 12B6 or is it Rule 56? It's... Well, it went forward on a 12B6 basis. My argument, in part, is that it perhaps should have been dealt with on a Rule 56 basis, and if it was dealt with on a Rule 56 basis, that the party should be given a modicum of discovery rights relative to the decisions that have been issued by this Court previously. And specifically what I'm referring to in the judge in his decision, this is in the appendix at page 89, stated in his decision, the affidavit submitted in this case is wholly speculative. Now, I mean, in a 12B6 motion, at least it's my understanding that the non-moving party has the benefit of any factual references, whether it be set forth in the complaint or what have you. Well, it's my understanding that you don't have affidavits in 12B6. Well, that's true. That's true, Your Honor. That's true, but I mean, this case started out in the Maryland court system. The Maryland court system... We don't have affidavits in 12B6, in motions to dismiss. Well, there are motions to dismiss in the Maryland state court system, too. All I'm suggesting is that the complaint, as it was filed in the Maryland court system, was sufficient. What's different about the Maryland court system versus the federal system is that the federal system has a standard set forth under the Supreme Court case, in Ashcraft v. Ickbell, in that the plaintiff has the obligation of moving its allegations in the complaint beyond speculation to, forget the phraseology exactly, but the... And this is part of... Do you think speculation is okay in the Maryland court? Do I think that speculation is okay? In the Maryland court, state courts. That's the distinction you're making. I think Maryland judges would be surprised to hear that distinction. I'll ask them the next time I see one. I'm not... There's no requirement in the Maryland court system that a complaint be taken beyond that speculative, into that Ickbell, or the Ashcraft v. Ickbell standard. So, this case, as it was filed, was sufficient, in my mind, under the Maryland system. It was removed over to the district court by the defendants, and they filed the motion to dismiss, in part, based upon the Ashcraft v. Ickbell issue. Now, in response to that motion to dismiss, we had asked the court, recognizing the difficulty that we would face, asked the court to grant plaintiff leave to amend the complaint based upon what we knew to be true. To include those provisions from the affidavit, which wouldn't be required in the Maryland system. To include provisions from the pooling and servicing agreement, which talk at length about the obligations on the part of the securitization trust to maintain, to take out insurances, to maintain insurances, and to apply for insurance benefits on loans that go into default in a securitization trust. I mean, right here, I brought this with me today, just to demonstrate for the benefit of the court, this three to four-inch stack of documents is the pooling and servicing agreement that governs this trust. Is that part of the record in this case? The pooling and servicing agreement is not a part of record in this case, your honor, but what I am suggesting to the court is that there are many things that could be added into an amended complaint to the extent that the court was impressed that plaintiff had not satisfied an Ashcraft v. Iqbal standard. And so... Who's your client O? Well, I don't know. Well, you said, was it a $500,000 mortgage? It was a $500,000 loan. $500,000 mortgage, and you say it doesn't owe the... It doesn't owe the defendant any more money, right? Because the defendant collected, but you admit they owe the money, right? Exactly. Are they making house payments? They're not making a payment to anyone. Are they living in a house? They're living in the house. They're living in a house for nothing, and they're not making payments. That's a pretty good deal. Well, maybe it's a pretty good deal, your honor, but I have to... You're right. It seems to me like that's probably the end of the loan business in this country. No, it's not, your honor. What is not being observed by the loan business in this country is that a lender... Mortgage loan business, I'm talking about. Right. Is that a securitization trust takes out insurance, recognizing... And if there's a default or something, an insurance company pays, then the insurance company is subrogated. That's correct, your honor. From what I remember from practicing law, there's the doctrine of subrogation. That is... And your client owes whoever paid off the loan. That would be absolutely correct. Well, then why aren't they... Why isn't your client paying the insurance company? We don't know who the insurance company is. We have a lender... So you're not paying anybody. We have a lender that says... And we're entitled still to go proceed with foreclosure and get double recovery on this. And I'm saying... I'm saying... Maybe you owe rent then, if you're not going to make any house payment. I'm sorry? Maybe somebody owes somebody something. Your honor, if... Your client's living in the place and not paying anybody. If the subrogore would come... Get free rent. Well, why is he bringing a lawsuit? Stir this stuff up. If the subrogore would come forward and say, We paid this note off. We're now owed this amount of money. I am sure my clients would be willing to extend those payments to that lender. Or to that insurer. Why did... This came up in the context of your action in state court, the quiet title. Correct. On the property. You weren't looking for the source of... To whom you contend that this money was owed. No, what I... You were seeking the quiet title. I'm seeking quiet title. Under the quiet title statute. And again, the particular issue under the Maryland quiet title statute that's different. It says that if I file this complaint with these allegations, which we did. That this action shall be deemed an in rem action. Concerning the property itself. So I'm concerned about the property. I'm concerned about the deed of trust that sits within it. Okay? I am not concerned about the note or the obligation on the note. Because that's a personal obligation. And by virtue of the terms of the statute, that obligation is irrelevant. What I'm talking about is, if that loan was paid off in the hands of this lender. Then by virtue of subrogation, somebody else now is entitled to that money. But this lender no longer has a right to go forward under... Under and by virtue of the deed of trust to collect a second time. Even if that's true, it doesn't allow you to seek the quiet title to remove any cloud on your client's claim to the title to the property. Your Honor, I would say that my time. But I'll be happy to continue with this question. And respond to the question now. I mean, if Your Honor would restate the question, please. I didn't quite understand. Even under your theory? Yes. That this money is owed to someone other than the lender. It would not support your suit to quiet title to remove any cloud. From your client's title to the home. I don't see why not. The statute indicates the statute indicates. That if it's if it's the homeowner's intention in filing the quiet title statute. And I think in by its own terms. It says you can seek to perhaps discharge the lien. Or you can seek perhaps to obtain an injunction. And it's the injunction against these lenders that that the plaintiff is seeking. They have been paid. They don't have the right to double collect on this. When a loan has by law now been subrogated to the benefit of someone else. Okay, let me put this to you a different way. Doesn't your argument result in a windfall for your client? No, Your Honor. And I think. And I think. Why not? In fact, there's Maryland case law which which suggests that if my client. If my client receives a benefit. As as an unintended third party based upon. A contract that exists between two other parties. There is no right or obligation rather on the part of of. The homeowner in this case the third party. To make restitution to either of these parties. And that and I and I. That confirms your view that what you're going to do. Is if you're successful in this quiet title action. Then your guys are home free. And that does seem to me to give them a windfall. And what you've just said to me in response to that. Just sort of puts the nail in that argument. No, what what I'm saying is. You mean what they're going to get the quiet title action. And then they're going to go search for the insurer. And make a check. What of the past due payments and interest. Is that what they're going to do? What I think should happen. What they're going to do. What I think should. Sir, my question to you is. Is that what they're going to do? If they get a judgment in their favor. Are they then going to take the amount that they've owed. And interest on it because they haven't paid for some years. Find the insurer and write a check to the insurer. Is that their plan? Absolutely. That's their plan. Yes, sir. That's what you're saying in federal court today. Yes, ma'am. Okay. I am. Then why are they bringing this action? If they're going to owe the same money to the same people. They wouldn't have owed. But they don't owe the money to the same people. They wouldn't be hurt one way or the other. If it has been. If the insurer has paid it. Then whoever they pay to has to pay the insurer. There's going to be. They're not going to be hurt by any double payment. There's simply going to be out paying your attorney's fees. They're paying your attorney's fees. And they're going to pay interest on this money. They haven't paid in their on their mortgage. What I'm suggesting to this court. This is just like. Top going around and around. What I'm suggesting to this court is based upon what has actually gone on factually in this case. Is not. And I think the end result of this case should be this. Is not that a deed of trust should be released. But the deed of trust should continue to exist for the benefit of the subrogated party. But that's not what you asked for. That's not what you asked for. You asked to remove any cloud to the title. That was one of the things I asked for an injunction. That's the only basis. That's what a quiet title action is. I asked for an injunction too. And I think and I think that an injunction. Doesn't necessarily require that the deed of trust be released. I'm saying the deed of trust can exist based upon. The subrogated interest that continues to exist. Why would you want it to exist? When you're going to go out and find the insurer and pay the money and all the interest due. There's no need for it to exist. Because that's going to be your first order of business. That's going to be my first order of business. But what I'm suggesting to this court is that I mean. Look, whether you're what your honors are suggesting. And I can I appreciate the thought process. And I mean, whether we pay party A or party B, you know, we admit we owe the money. But you're confessing liability on the part of your client to the assignee. The subrogate, whoever. Yes, sir. You're confessing liability, right? Yes, sir. And the deed of trust that's probably consistent with the deed of trust, maybe. And there's a lot in this deed of trust. But there are provisions. The trustee is the whatever. The trustee is not who you sued here, right? No, I did not. There is no suit against the trustee. I think that the. I think that there are too, though, many provisions. John M. Mercer is the trustee, according to the papers we have here. No, no suit was brought against the. There are additional provisions under the deed of trust. And specifically, I refer the court's attention to page 28 of the appendix. I mean, I read, I mean, where it talks about miscellaneous proceeds being assigned to the lender, says miscellaneous proceeds shall be applied to the sum secured by this security agreement, whether or not then due with the excess, if any, paid to borrower. There is recognition on the part of the drafters of this document that monies may come in from third sources. And I'm suggesting, in this case, monies came in from third sources. Monies may be due to that third source. But these two lenders no longer have an interest in this at all. There is no dog in this fight on the part of either of these lenders. All right. I think your time has expired. Thank you. Thank you. Thank you. Good morning, your honors. May it please the court. My name is Joshua Tropper, and I'm here to represent the FLEs. I'm not really sure how much I have left to say, because the three who have made most of my case for me, in your questions to opposing counsel, so I assume you have some for me. Yeah, no, I would appreciate the answer to this question. How long have the appellants failed to pay on their mortgage payment? I'm actually not sure that that specific amount is in. Not how much, how long. I'm sorry, I'm not sure. I don't believe that that's in the records, your honor. The record. I beg your pardon? You don't know either? No, your honor. I mean, if I was talking to my client, that's one of the first things that my client would be interested in telling me. Your honor, that may very well be. It's a reasonable thing to suggest. But I'm here. I'm here with the record. It could be two months. It could be two years. Oh, it is. It is certainly longer than that, your honor. The. Than what? Longer than two months or two years. All right. Longer than two years. Why haven't you made any action to get paid? Your honor, the best answer I would have to that without divulging client confidence is that the client respects the judicial process. Uh, you know, I, uh, it's I hope that your mortgage or I hope I can borrow from them one of these. They will respect the judicial process. Your honor, I don't mean I don't mean to to be disrespectful or flippant, your honor. But this this is a very odd case. Uh, and, um, I quite frankly, I'm I'm fairly confident my client didn't expect it to go on this long. It is. Is my understanding correct that the quiet title action in state court was filed in response to the threat of foreclosure? I, uh, I believe that the allegation, your honor, I actually don't don't have that information either specifically. That also, uh, unless that's alleged in the complaint, that's also not in the record, and I don't remember it. Well, the the plaintiff sought a declaration that Akwin and Deutsche Bank no longer held any interest in their home. And I, for some reason, understood that to be in response to a threatened foreclosure. You don't know that. Well, your honor, I have no doubt that there was a threatened foreclosure, at least to the extent of notices of default. It's just again, my memorization of facts was limited to the record. There's there are a lot of things that I that just have slipped my mind this morning because I was focused on what's actually in the record already. So you don't know anything about the notices of default? Uh, I I have I have to say that's true, your honor. If and and if it's not in the record, I wouldn't have been prepared to talk about it to this court in any event. And I apologize for not knowing the factual background. The deed of trust is dated January 2007. Yes, that's eight years ago or so. Seven years, seven plus. And there was a notice of default. What was it dated? I do not have that date, your honor. You don't know how many years they've not been paying anything. That is correct. I know that the the complaint for foreclosure action in your papers. Yeah, you know, we have all these cases all week and we shouldn't be knowing the case better than you all do, you know? Yes, your honor. I do apologize for that. Um, you say quite frankly, I was 13 on June 10, 2010. Plaintiffs made another attempt to thwart the foreclosure sale of the subject property by filing a second action in the circuit court. So one time you knew about it. My colleagues, actually, this case may even have been prepared in the lower courts by other counsel. I personally was not absolutely right. And, you know, I was in this very courtroom one day. This won't count against your time. I was sitting over there waiting to have my case heard. And I had Judge Winter, who was chief judge, you know, from Maryland of the Fourth Circuit at the time. And somebody said from the Maryland, from the Virginia Attorney General's office, your honor, I didn't handle this case below. So I really don't know the answer to that question. He said, you go back to the Virginia Attorney General's office over lunch and you find out the answer to that question and you come back here. And by God, I thought to myself, I'm never going to say that to the Fourth Circuit, no matter what. It's your case now. Yeah. Oh, yes, your honor. I was prepared to argue legal issues and equitable issues. You have to be prepared on the facts. You need to know the facts of your case to be able to help us. You need to know them better than anybody in the courtroom. You and your colleague on the other side. Your honor. We ought to be able to depend on you. Give us the facts. We need to be able to depend on you. Give us the facts. Your honor, in this. Particularly in a mess like this. In this particular case, I absolutely agree and I do apologize for appearing unprepared, your honor. In this particular case, the primary issue is purely legal. Uh, and the, uh, the, the, the only factual question. But we apply law to facts. Yes, your honor. We need to know what the facts are. Yes, your honor. We've got this appendix and that that need of trust is multiple pages. Yes, your honor. And it's fine print. Yeah, I'm. Yes. And you're the expert. You're an officer of this court. You need to understand it and be able to explain it to us. It talks about mortgage insurance in there. What happens when there's about mortgage insurance? If the mortgage insurance pays off, then who's the lender owe his money to? The, the answer. Yes, named John Mercer is the trustee. He's not sued here. I assume he acts on behalf of whoever's entitled to the money. And whoever's and, and. Aquin loan servicing, as the name implies, is the loan servicer. Uh, that's the, the name defendant, which means that Aquin also acts on behalf of whoever is entitled to the money. Uh, and. But John Mercer is the trustee under the deed of trust. Yes. I don't know Mr. Mercer, but he's the trustee. And it spelled out what he, what he does. He acts on behalf of whoever's owed the money, right? Yes, Your Honor. To make sure that they get their money back and secured by the real estate. Yes. And, and the. Allegation in this case and a claim for, for. Quiet title, which is an equitable proceeding, which means that if there is, as Judge Mott said, a windfall to, to one P that's not equitable. That could be the end of the, of the analysis. Well, if they're still living there and they haven't made any payments on a $500,000 loan, they pretty much get in the windfall. I can't disagree with that, Your Honor. The, the. And, and Your Honor also said earlier that this would be the end of the mortgage loan business as we know it. If the appellant's position in this case were made the law. I'm not an expert in it, but just my reaction from reading this. And, and I agree completely that the, the, because. I mean. No borrower. Payments in to whoever sends me the, the, the notice to send it in. I mean, I, because I know I owe something and I'm living there. If, if. I think that's about 99.99% of the people out there, I guess. We like to hope so. The, if the appellant's position in this case were upheld, no borrower would ever make the first payment. Because they get a free house as soon as they sign the trust document. They get a free loan. Well, that's the, the, the necessary implication from that is that no one would ever make loans. No one would ever insure loans. And as Your Honor said, that would be the end of the loan, the mortgage loan business as we know it. And there are surely people out there, especially in these last six or seven years, who might think that's a good thing. So what do you say that this, you say this, this lawsuit's frivolous? Uh, Your Honor, I, I, I would say, uh, that this lawsuit is very weak. Um, and I would probably not like to express an opinion as to whether it's frivolous because that would. Oh, you're on the other side of it. Yes, Your Honor. That's why I would not like. You're making a complaint in the federal court of Maryland and now in the courts or court of appeals against your client. I ask you the question, is it frivolous? And you're the only person here that's representing the defendant. Your Honor, my. And I just want a yes or no answer. My, my personal opinion, Your Honor, is that it is. Your opinion as a lawyer and as a lawyer representing the defendant, the, the, the, uh, appellee in this case is what? As, as, as counsel for the appellees in this case, Your Honor, uh, I, I have to say that it is a very creative argument for a change in the law. Uh, and therefore I, I would, I would have no trouble making the art. If the question came up, I would have no trouble making the argument that it was frivolous, but it would not. Is up. Yes, Your Honor. I've just asked it three times. I, I'm, I'm trying to avoid impugning the character and integrity of another attorney when, when it is not necessary, Your Honor. Uh, I, I do believe that the facts in the law do not support by any stretch of the imagination this case. Okay. I think that's, I think that, that I hope that answers your question. I'm going to let you off the hook and you understand now that the next time we depend on you to know the facts and understand another lawyer doing it, but next time. Your Honor, that was not intended as an excuse and I appreciate your indulgence, but I, I did approach this case as a purely legal one that the facts were based on. That's the wrong way to approach it. Yes, Your Honor. I have been tutored. We figure out the law. We got all these smart law folks over here. Figure out the law. What we need to understand are the facts. Okay. We're going to file and apply the law to you. Your Honor, Judge Motz, uh, uh, and, and you're, and you have, have both. Judge Motz is coming to your rescue, I don't blame her, but. No, I, I'm, I'm not expecting rescue, Your Honor. Okay. Could you turn to page 51 of the JA? Do you have it in front of you? Yes, Your Honor. Tell me what this is. This is a top help. That's what I want. Help. Help for explanation. So give me some help. Your Honor, if you were looking at a computer screen and you saw that, you would probably want to press help. What is this? The, this is, uh, I, I should, uh, preface if, if I might, my response by saying that this is part, an exhibit to an affidavit, which was, which is in the record because it was tendered, but it is not, it was not considered by the district court. It's their expert's affidavit? Yes, Your Honor. Okay. It's an exhibit to their expert's affidavit. And what is it? And, and, and, and having read the affidavit and looked at the exhibit, I could not figure out what it meant any more than the district judge did. Uh, it is intended, I, I, as I, if I understand correctly, uh, to identify loans as they are on account records of, uh, a, of, of one of the defendants here? No, Your Honor. Uh, of the entity that actually owns the note. Um, the, uh, and, and it is. Okay. So, so, but the, the fact. It's their exhibit, so you're saying that they should be able to explain it and you can't, right? Uh, I don't believe they can explain it either, Your Honor. I think, I, I believe that the, the plaintiffs expect, understand that their expert can explain it and, uh, our view of it is that it is irrelevant, uh, because as a matter of law, even if this showed that there were an accounting, uh, accounting record somewhere that showed that this particular loan was marked as zero balance because there were insurance proceeds, all of which is speculation and is not facts in the record. Even if all of that were shown, then as a matter of law, it would still not add up to a claim, a valid claim for clear title, for quiet title. Uh, and when you sit down, you might want to reread your own memorandum of law in support of the motion to dismiss because it's, I found it helpful in answering the questions that you seemed unable to respond to. Well, I think your response was that some of the lawyer prepared that another firm. And you know, Your Honor, I, I, uh, again, I'm, I'm, I'm not offering that as, as an excuse that it's, that's not an excuse. That's an explanation. Yes. And, and, uh, the, I, I do appreciate that distinction and I apologize for having accidentally and misguidedly actually followed it, uh, in preparing for this morning. Uh, I, I do think that the, uh, I, I need to disagree with the appellant's counsel on one item and that is, uh, whether the district court considered the expert's affidavit because counsel's answer to that was it absolutely did consider it. Uh, in fact, what's clear from the transcript is that the district court, the district court considered the affidavit as a proffer of evidence and determined that it was not appropriate. It was, it was speculative. It was not, it was not appropriate. It was not admissible. The court did not convert this to, to summary judgment, um, and, and explain why. Can I ask you one more question? Of course, Your Honor. I'm sure you're going to know the answer to it. But anyway, um, in this affidavit, you say that the, uh, state court action was, no, that the district court action was dismissed with prejudice on April 22, 2010 because of the court action. At the time of the dismissal, the subject property was scheduled to be sold at foreclosure on June 16th. It never was sold or was it sold? To the best of my knowledge, it was not. Yeah, right. And then the next paragraph says it's canceled. Canceled. Just keep, have to keep reading these paragraphs. It's going to be excellent. And then it's removed to federal court in 2013. I'm just floored that this is, you know, I've got to go home and tell my husband that there is a new, a new way not to pay your mortgage. Um, Your Honor, I hope that, uh, before you tell your husband that there's a new way not to pay the mortgage, uh, that this court will make sure that that way doesn't work. And, and I, I, I think that, that the, um, uh, there is the, the, the, the, the difference, I think you, you, you mentioned earlier, the difference between the pleading standards in Maryland and the federal court may exist. It's not as substantial as counsel suggested is, but I think more important if, if, if counsel, if, if the plaintiff has evidence that would enable it to plead facts that would raise its claim from purely speculative to plausible, then in the face of a motion to dismiss under 12 B six in the federal court, it has every right to amend freely. Well, what, what facts would they be? In other words, I think let's assume for purposes here that this loan was also was, was the lender does, has gotten mortgage payments for the, for the loan insurance payment. Yes, Your Honor, the, the question, the, the, the allegation is that there is insurance. The allegation is that the insurance paid, it is, it is a legal conclusion to say that because of that payment, the debt is released. That's alleged, but that's really a legal conclusion. That's not a fact. Well, I guess if that acts, all that actually happened, why would you have any right, any, why would you care? You know, I'm talking about standing for plaintiffs. Your Honor, be standing to defend. Well, that comes in, there's multiple layers of answers to that. First one is that precisely because it's purely speculative as to whether there's any question about the appellee's standing. Second, because the appellee is the loan servicer. So the note itself may transfer ownership multiple times. The trustee still is responsible for it. The servicer still services it. Somewhere in somebody's records, it will indicate who actually owns the note at any moment. And the third thing is that if there is a contract of insurance, which is alleged, then the exact nature of the subrogation depends on the contract of insurance. And in some contracts, it means that the insured can proceed, or some contracts, and then reimburse the insurance. Sometimes the insurer proceeds in the name of the insured. Sometimes the insurer simply takes over possession of the race. All of that here, because it's purely speculative as to whether there even is insurance, we don't have in the record of this case, and I personally do not know what the circumstances are there. But I do know that my client believes it still has the right to be here. And from that, one might even infer that it is either that there is no insurance, or that it hasn't been paid, or that it has the right under the insurance contract to continue acting in its own name and just deal with the insurance company as an accounting matter. In any of those circumstances, it doesn't add up to clear title, because as counsel acknowledged, the plaintiff still owes the debt to someone. Whether there is, I'm sorry, I'm out of time. Thank you very much. I'm not sure exactly how much time I have left, but I would like to answer some of the questions that were posed. Firstly, this case was filed not under threat of a foreclosure. In fact, there was a foreclosure case that was pending before this case was filed. However, the lender dismissed that foreclosure case voluntarily on its own. I still don't know why they did it, but that's what happened. The pendency of a foreclosure action would have prevented the ability on the part of the plaintiffs to have initiated this action. Secondly, the plaintiff is not seeking a free house, and again, I want to emphasize that all I'm asking the court to recognize are the legalities that are actually going on, the facts that are actually going on between the parties. And if a servicer on behalf of a trust in which this loan has supposedly been assigned and cannot come out has been paid off by somebody, it doesn't matter, where, I mean, should the notion lie that they should be entitled to collect a second time? And this is why I brought up the notion of the right of subrogation. It's the subregor that should have the right to come forward. It's the subregor that has the legal right to come forward. That loan has been in the hands of the trust paid off. I'm not arguing that it's paid off by the borrower, and I'm not suggesting to this court that the borrower doesn't continue to owe on that note. But I want this to be clear. The two, the notion of there being quiet title, there is an aspect of quiet. I mean, this is in the quiet title statute itself. It talks about an in rem or quasi in rem. The in rem action is an action if there was an order issued that quieted title to this particular property. That is an order that goes out to the world at large, everyone. A quasi in rem action is an action in which the orders that may pertain to that particular case and be issued pertain to the parties that are before it only. And that is what I'm here to try and get this court to recognize or the court below to recognize. I am not, again, suggesting, all I'm suggesting is that Deutsche Bank, as trustee for the service by Auckland Bank, have no right to continue collecting on this note. That right has now been assigned. And I'm asking this court to simply recognize that legal principle. The comment, the notes that your honor had asked to turn to the appendix at page 51. That is an attachment to the affidavit that was submitted by William Petallo. I would suggest, although I don't know particularly, I do think that this is part of a report that would have been issued from the Bloomberg Reporting Service that is available to, not necessarily to the public at large, but certainly to lenders and to those that have licensed the rights to access this information. And this information will give information relative to the status of a particular loan in a publicly traded trust, such as what this, such as what goes on in this case. I cannot explain it. Only Mr. William Petallo can explain it. I'm not, I'm not, but he attaches this in support of his, his affidavit that he had prepared in concluding that, that this loan had in fact been paid off. I think to the extent that the court below suggests, as it did, that, that the affidavit itself is wholly speculative. I mean, I can't understand how a court or anyone can come to a conclusion that something is speculative unless they've taken a look at it and considered it. And, and Judge Titus Below took a look at this affidavit, considered it, and concluded this is speculative. And I think that that is wrong under the standards, whether it be under a 12B6 or a summary judgment standard, for the judge to have come to that sort of a conclusion. The, if anything, if anything, particularly with what's on the line in these, in this that, that the parties be allowed to engage in discovery to find out exactly what the heck has happened in here in regards to these, these lenders being paid off, where the source of funds came from, what the subrogation rights may be, so on and so forth. But, so maybe my argument is a technical one. Maybe it is a technical one. I mean, we can look at it and say, well, yes, the borrower owes money, you know, so who cares if he pays party A or party B. And, and in that regard, I am asking this court, in a technical sense, that particularly under the Maryland statute, which says that my borrower's personal obligation on the note is irrelevant, that we're looking at this piece of property, we're looking at the lender's right, if, if there is any in that deed of trust that continues, what might that be? And I am suggesting to this court that if anything, again, I am not, even though it was put in the complaint, that, that, that the lien be released. I don't think that that's necessarily the proper answer or conclusion in this case. I think that the lien should stay in the property for the benefit of a subrogated party. But the issue of subrogation, again, is not before the court in this case. And that issue, we don't know who the, who the subrogator is. The, that is an issue for another day. The essential problem that I will tell you that I have with your argument is I don't understand if I take everything that you say as an officer of the court as the truth, then I don't understand the reason for this case. Because if you owe someone and you're going to pay someone, what difference does it make to you to whom you pay? Why break it out for six years? Why hire an attorney? Why take an appeal? Why go to two courts, get dismissed if the end result is going to be the same? I mean, you're just not a roving assistant attorney general trying to find the correct person to pay. Your Honor, it is important. It is important to the extent that we need to understand what goes on in the loan industry. It is so easy. It is so easy to say. Your client wants to write an expose about the loan industry? I'm sorry? Your client wants to write an expose about the loan industry? If he wants to. I'm not going to stop him. I mean, I think there are books out there that. You're not going to stop him. But that's the purpose of this lawsuit, to expose the loan industry? It's important to recognize what goes on in the loan industry. What is going on in the loan industry and in this case is not right. Anyhow, I see my time is about to expire. The one thing, again, it would be the plaintiff's request or the appellant's request, Your Honors, that again, I believe that Judge Titus erred in several regards. I've set out that error as amply as I could in the briefs that I have submitted. I do think that the case should be remanded, if for no other reason, but to engage in discovery to get to the bottom of what is going on. I think we understand your argument. Your time has expired. Well, thank you. Thank you, Your Honors. I appreciate your putting up with me. Thank you.
judges: Diana Gribbon Motz, Robert B. King, Allyson K. Duncan